Daniel S. Szalkiewicz, Esq. (DS2323)
Cali P. Madia, Esq.
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 W. 73rd Street, Suite 102
New York, NY 10023
*Attorneys for the Creditor K.L.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re:<br>    Joel Rivera,<br><br>                    Debtor. | Chapter 7 Case No. 1-23-42603-nhl |
| K.L.,<br>                    Plaintiff,<br>    -against-<br>Joel Rivera,<br>                    Defendant. | Adversary Case No. 1-23-01071-nhl<br><br>Bankruptcy Judge |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL JUDGMENT BY DEFAULT OR IN THE ALTERNATIVE TO LIFT THE STAY SO THE DEBT CAN BE LIQUIDATED IN THE SUPREME COURT OF THE STATE OF NEW YORK**

*On the Brief:*

Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.

DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
*Attorneys for Plaintiff*
23 W. 73rd Street, Suite 102
New York, New York 10023
Tel: (212) 706-1007
Fax: (914) 500-2315
*daniel@lawdss.com*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ 2

TABLE OF AUTHORITIES ..................................................................................................... 3

INTRODUCTION ....................................................................................................................... 4

PROCEDURAL HISTORY ........................................................................................................ 5

STATEMENT OF FACTS .......................................................................................................... 5

ARGUMENT ................................................................................................................................ 7

    A.   Defendant's Failure to Answer Warrants Default Judgment ............................................. 7

    B.   Jurisdiction and Venue ....................................................................................................... 8

    C.   Defendant's Debt is Nondischargeable Pursuant to 11 U.S.C. §523 (a)(6) ........................ 9

REMEDIES ................................................................................................................................ 13

ALTERNATIVE RELIEF ........................................................................................................ 14

CONCLUSION .......................................................................................................................... 15

TABLE OF AUTHORITIES

**Cases**

Axos Bank v Ottomanelli, 2023 US Dist LEXIS 220179, at *3 [EDNY Dec. 11, 2023, No. 23-cv-00941 (JMA) (JMW)] ................................................................................................. 8

B.B. v Grossman (In re Grossman), 538 BR 34, 38 [Bankr ED Cal 2015] ................................. 10

Burberry Ltd. v Horowitz (In re Horowitz), 2016 Bankr LEXIS 805, at *15-16 [Bankr SDNY Mar. 14, 2016, Nos. 14-36884 (CGM), 15-09002 (CGM)] ....................................... 9

Fleet Credit Card Servs., L.P. v Macias (In re Macias), 324 BR 181, 186 [Bankr EDNY 2004] .. 7

Fustok v Conticommodity Servs., Inc., 873 F2d 38, 40 [2d Cir 1989] ......................................... 13

Hoewischer v White (In re White), 551 BR 814, 827 [Bankr SD Ohio 2016] ............................. 10

In re Bressler, 387 BR 446, 454 [SDNY 2008] ........................................................................... 11

Navistar Fin. Corp. v Stelluti (In re Stelluti), 94 F3d 84, 87 [2d Cir 1996] ................................... 9

Voyatzoglou v Hambley (In re Hambley), 329 BR 382, 402 [Bankr EDNY 2005] ....................... 9

Williams v Horowitz (In re Horowitz), 2010 Bankr LEXIS 701, at *5-6 [Bankr EDNY Mar. 1, 2010, Nos. 809-75567-ast, 09-8434-ast] .................................................................. 14

Yash Raj Films (USA) v Ahmed (In re Ahmed), 359 BR 34, 42 [Bankr EDNY 2005] .............. 12

Yash Raj Films (USA), Inc. v Akhtar (In re Akhtar), 368 BR 120, 127 [Bankr EDNY 2007] ...... 9

**Statutes**

11 U.S.C. §523 (a)(6) ............................................................................................................. 9, 13

28 U.S.C. § 157(b)(2) ..................................................................................................................... 8

28 U.S.C. §§ 1408 .......................................................................................................................... 8

28 U.S.C. §§ 157 ............................................................................................................................ 8

29 U.S.C. § 1132(e)(1) ................................................................................................................... 8

362(c)(2)(C) ................................................................................................................................. 14

362(d)(1) ...................................................................................................................................... 14

E.D.N.Y. LBR 7055-1 ................................................................................................................... 7

Pursuant to Federal Rules of Civil Procedure 55(b)(2) and Local Civil Rule 7.1, Plaintiff K.L. ("Plaintiff") respectfully submits this Memorandum of Law in support of her Motion for Final Judgment by Default ("Motion") against defendant Joel Rivera ("Defendant" or "Rivera"). For the reasons set forth in Plaintiff's Motion, this Memorandum of Law, and the Certification of Plaintiff, Plaintiff is entitled to final judgment by default as a matter of law against Defendant. In the alternative, should the court determine that the proceeding cannot be decided without the liquidation of the debt first, Plaintiff requests that the automatic stay be lifted so the matter can be litigated in the Supreme Court of the State of New York.

## **INTRODUCTION**

Plaintiff and Defendant were, for a time, engaged in a romantic relationship while Plaintiff and her husband were separated. Shortly after Plaintiff informed Defendant that she was putting an end to their relationship and reuniting with her husband, Defendant retaliated against Plaintiff by sending to her husband and business partner intimate media of Plaintiff.

While Plaintiff was aware that some of the photos were being taken, she and Defendant discussed that they should never include both her face and body and that they were always to remain private. Despite this, without Plaintiff's permission or consent, Defendant sent the intimate media to those closest to her with the intention of humiliating her and interfering with her relationships.

Plaintiff's personal life, work life, and marriage have been devastated by Defendant's vicious acts. Now, to avoid any liability for his claims, Defendant has initiated a Chapter 7 bankruptcy proceeding. Defendant's actions were malicious, socially reprehensible, loathsome,

and intentionally designed to harm Plaintiff, socially and professionally. Accordingly, any potential debt Defendant may owe to Plaintiff is nondischargeable under 11 U.S.C. §523(a)(6).

## PROCEDURAL HISTORY

The instant adversary proceeding was initially filed on August 24, 2023 (ECF 1). Plaintiff served a copy of the summons, complaint, and scheduling order on Defendant on October 6, 2023 (ECF 7). Defendant did not timely file an answer or otherwise respond to the complaint. At the court conference on November 30, 2023, Plaintiff was directed to file a motion for default judgment.

## STATEMENT OF FACTS

K.L. and Rivera dated from 2019 until 2020 during a period when K.L. had separated from her husband (Exhibit 1, ¶14). During the course of their relationship, Defendant would sometimes photograph Plaintiff while the two were kissing and/or in bed. Though Plaintiff was aware that she was being photographed in some of the images, she was always careful to cover her face if the picture showed her naked body or cover her intimate areas if the image showed her face; she made certain that Defendant knew the content was to remain private. (Id., ¶16).

Shortly after the COVID-19 pandemic struck New York and the rest of the world, K.L. and her husband decided to work on their marriage and K.L.'s husband moved back into their home. (Id., ¶16). 18.   K.L. alerted Rivera of this change in circumstance and attempted to peacefully end the relationship. (Id., ¶17).

K.L. hoped that Rivera was moving on as well until, when the two were in a Zoom networking conference with other professionals in their field, Rivera asked her to call him. Not

wanting to reopen a private dialogue with Rivera, K.L. did not call him as he had requested. (Id., ¶19). In retaliation, Rivera sent numerous messages to K.L.'s husband that included images of her naked, performing oral sex, and engaging in sexual intercourse. (Id., ¶20).

The same day, Rivera sent text messages and WhatsApp messages to Plaintiff's business partner which contained images and videos of K.L. naked and engaging in sexual acts. (Id., ¶22).

Rivera wrote to Plaintiff's business partner:

> Just in case you were wondering who & what your "gordis" | "business partner" was doing for the past year...before she got "quarantined". I'm the reason for many the days why she was late to the office or left early for "a meeting" or "event" – although we did actually go to those together quite a number of times...& yes while we were at this last Triple Play. A couple of her close friends knew about our relationship, yet one of the reasons she didn't want to tell you was because you & I kissed a few years back there – she got jealous that day & has been a few times since. If she says it was just a "one-time" fling...I have plenty more where this came from!!! Check your WhatsApp for more...
> (Id., ¶23).

When Plaintiff's husband and business partner showed Plaintiff the messages, she came to realize that Defendant had, on multiple occasions, recorded her without her knowledge, permission, or consent. In one such video, the camera is pointed toward a mirror which shows Plaintiff fully naked and engaging in sexual intercourse. Plaintiff's life has been ravaged by Defendant's betrayal and revenge. (Id., ¶24).

On March 16, 2021, Plaintiff filed an action against Rivera in the Supreme Court of the State of New York, County of Queens. The complaint alleged four causes of action (1) Violation of New York City Administrative Code 10-180, (2) Violation of Civil Rights Law 52-b, (3) Intentional Infliction of Emotional Distress, and (4) Tortious Interference (see Exhibit 2).

On April 18, 2023, Defendant filed his interrogatory responses in the Supreme Court. In his responses, Defendant admitted that he sent intimate images to third parties. Defendant

6

further produced documents confirming Plaintiff's allegations, including screenshots of the messages he had sent.

On July 24, 2023, while discovery was pending in the Supreme Court, Defendant filed his Chapter 7 Petition. After being served with a copy of the complaint in the adversary proceeding, Defendant's Chapter 7 attorney sent an email stating "Debtor has reviewed the Summons and has advised this Firm that he will not be retaining counsel on the AP action, nor responding due to financial difficulties and cause of action" (Exhibit 3).

Defendant then failed to appear for the Pre-Trial Conference on November 30, 2023. This instant application follows.

## ARGUMENT

### A. Defendant's Failure to Answer Warrants Default Judgment

Under Fed. R. Civ. P. 55(a), a default is entered "if the defendant does not respond to the complaint within thirty days after the issuance of the summons" (Fleet Credit Card Servs., L.P. v Macias (In re Macias), 324 BR 181, 186 [Bankr EDNY 2004]). Once this happens, under Bankruptcy Rule 7055, a plaintiff may move for a default judgment.

The Local Bankruptcy rules required that "A default judgment may be sought only by motion, which shall be served on the defaulting party, the defaulting party's attorney, if any, and, except in an adversary proceeding to determine dischargeability, the trustee." E.D.N.Y. LBR 7055-1.

Before imposing a default judgment, this Court must accept well-pled allegations "as true" and determine whether they establish the defendant's liability as a matter of law. (Axos

Bank v Ottomanelli, 2023 US Dist LEXIS 220179, at *3 [EDNY Dec. 11, 2023, No. 23-cv-00941 (JMA) (JMW)]).

"To satisfy the requirements of the prima facie case the plaintiff must present evidence from which a factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action." (Id.)

Here, as detailed in the annexed Declaration of Daniel Szalkiewicz, Defendant was properly served with the summons, complaint, and scheduling order but failed to appear or otherwise respond. Defendant's failures to appear or otherwise respond are not excused, as he is not a minor, incompetent, or protected by the Soldiers and Sailors Relief Act of 1940.

More so, Defendant's own Chapter 7 attorneys have indicated that he intends to default in this matter (Exhibit 3). As detailed below, Plaintiff is able to demonstrate each element that the debt should be deemed nondischargeable pursuant to 11 U.S.C. §523 (a)(6).

**B. Jurisdiction and Venue**

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 29 U.S.C. § 1132(e)(1) and (f). This adversary proceeding relates to the above-captioned case under Chapter 7 of the Bankruptcy Code which is pending in the United States Bankruptcy Court for the Eastern District of New York.

This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

Because this Court has jurisdiction and venue is proper here, and Defendant's default has already been noted by this court for his failure to answer or otherwise respond to the Complaint, a default judgment is warranted.

**C. Defendant's Debt is Nondischargeable Pursuant to 11 U.S.C. §523 (a)(6)**

Section 523(a)(6), 11 U.S.C. §523 (a)(6) provides, in pertinent part, that a discharge under sections 727 or 1141 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity...". Pursuant to the statute, "a discharge will not be effective against any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" (Id.). A plaintiff must establish "the debtor acted willfully in committing the injury" and that the debtor "acted maliciously in committing the injury" (Yash Raj Films (USA), Inc. v Akhtar (In re Akhtar), 368 BR 120, 127 [Bankr EDNY 2007]).

"Willful" means causing a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury" and can be satisfied "if the debtor had actual knowledge that he or she was violating the law and the intent to bring about injury" (Burberry Ltd. v Horowitz (In re Horowitz), 2016 Bankr LEXIS 805, at *15-16 [Bankr SDNY Mar. 14, 2016, Nos. 14-36884 (CGM), 15-09002 (CGM)]).

Dealing with the second prong, the Second Circuit has defined "malicious" as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will" (Navistar Fin. Corp. v Stelluti (In re Stelluti), 94 F3d 84, 87 [2d Cir 1996]). Malice can be implied in a person's actions and shown "when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another" (Voyatzoglou v Hambley (In re Hambley), 329 BR 382, 402 [Bankr EDNY 2005]).

While there is are no published decisions in the Second Circuit relating to nonconsensual pornography, several neighboring districts have determined that the actions lead to a

nondischargablility of debt (see Hoewischer v White (In re White), 551 BR 814, 827 [Bankr SD Ohio 2016]; see also B.B. v Grossman (In re Grossman), 538 BR 34, 38 [Bankr ED Cal 2015]).

In re Grossman specifically addressed revenge porn, beginning the decision with the declaration that "Revenge porn comes to bankruptcy." There, the court was tasked with determining whether the act of "upload[ing a] private video on a pornography website, labeling it with the plaintiff's maiden name and married name and the tags 'amateur / ex-girlfriend'" was sufficient to support a claim (Id. at 35). The Court held that, if proven to be true, the Plaintiff satisfied the willful requirement because:

> Uploading the video onto the pornography website was self-evidently no accident. In addition, the defendant's acts of identifying the plaintiff by both her maiden and her married names are circumstances indicative of a subjective intent to embarrass and humiliate her, inviting harassment, shaming, stalking, or worse.
> (Id. at 39-40).

When considering the "malicious" prong, the court found that:

> Here, there is direct evidence of factual malice. The defendant's animus towards the plaintiff and intent to injure the plaintiff is inherent in his act of labeling the uploaded sex tape with the tag "ex-girlfriend." It reeks of revenge and of intention to embarrass and humiliate the plaintiff in a manner that necessarily causes damages by inviting harassment, shaming, stalking, or worse.
>
> In other words, the facts alleged in the First Amended Complaint support a determination by a trier of fact that the defendant's conduct was "malicious" under the requisite standard of being wrongful, intentional, inexcusable, and necessarily damaging to reputation and psyche.
> (Id. [internal citations omitted]).

Similar to the debtor in Grossman, there is no doubt that Defendant's actions were willful and malicious. Defendant sent the images to Plaintiff's husband and business partner shortly after she ended her relationship with him.

It was no accident that Defendant undertook the above-described acts; according to Defendant, his actions are directly correlated with him learning that Plaintiff had decided to go back to her husband. Reviewing the messages, which can be submitted in camera, together with the pictures, there can be no doubt Rivera's conduct was undertaken with malice and designed to cause deliberate injury. Rivera sent Plaintiff's husband a message stating to look at the "'beautiful' woman you are 'married' to & sleeping with!" followed by a picture focused on Plaintiff's vagina and breasts; a video – with volume – of Rivera having sexual intercourse with Plaintiff; and a photograph of Plaintiff laying naked in bed on her cell phone. Other text messages sent from Defendant to Plaintiff's husband include two different videos of her engaged in sexual intercourse, followed by a video of a picture of Plaintiff in bed with Rivera. Defendant wrote "Just in case you have been wondering who & what your 'wife' was doing for the past year... before she got 'quarantined' with you, here you go! I hope you are enjoying it as much as I did." Defendant's conduct was designed to cause injury to Plaintiff, which it did. Furthermore, Defendant also sent sexually graphic images and videos to her business partner with the clear intention to humiliate Plaintiff as well as cause discord between her and her partner by insinuating Plaintiff's work suffered because the two were in a relationship and suggest that Plaintiff kept secrets from her partner.

Constructive malice may be demonstrated "by the acts and conduct of the debtor in the context of the surrounding circumstances" (Id.). More so, "the element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor" (In re Bressler, 387 BR 446, 454 [SDNY 2008]).

A court may consider circumstantial evidence in determining what the debtor may have known when taking the action that produced the injury (Id.). Defendant's conduct falls squarely within the §523(A)(6) definition of "willful" and "malicious." Defendant intentionally committed disgusting and criminal acts with the purpose of harming Plaintiff. In In re Grossman, the court found the act of revenge porn both willful and malicious. The court determined "[u]ploading the video onto the pornography website was self- evidently no accident. In addition, the defendant's acts of identifying the plaintiff by both her maiden and her married names are circumstances indicative of a subjective intent to embarrass and humiliate her, inviting harassment, shaming, stalking, or worse." (Id.). The Court went on to find that:

> the defendant's animus towards the plaintiff and intent to injure the plaintiff is inherent in his act of labeling the uploaded sex tape with the tag 'ex-girlfriend.' It reeks of revenge and of intention to embarrass and humiliate the plaintiff in a manner that necessarily causes damages by inviting harassment, shaming, stalking, or worse" (Id.).

Reading the facts alleged in Plaintiff's Complaint, Defendant's actions define aggravated socially reprehensible behavior. While the defendant in In re Grossman uploaded plaintiff's content online with her name to embarrass her, Defendant here sent Plaintiff's content directly to those Plaintiff held closest, ensuring maximum pain and humiliation.

Rivera's actions in sharing the deeply personal and intimate images and videos were malicious. "Malice may be implied from 'the acts and conduct of the debtor in the context of [the] surrounding circumstances.' Malice may be found where the debtor breached a legal duty 'wilfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance to warrant the denial of a discharge.'" (Yash Raj Films (USA) v Ahmed (In re Ahmed), 359 BR 34, 42 [Bankr EDNY 2005][internal citations omitted]). Rivera deliberately shared the images and videos with

12

her husband and partner/friend knowing that he did not have K.L.'s permission or consent and with the intention of straining Plaintiff's relationships with those people. He demonstrated an utter disregard for privacy and intentionally shared K.L.'s images and videos to harm her.

## REMEDIES

Pursuant to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Based on the forgoing, the Court should find that any potential debt to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(6). Because the relief sought is "neither liquidated nor capable of mathematical calculation" it is "not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment" (Fustok v Conticommodity Servs., Inc., 873 F2d 38, 40 [2d Cir 1989]). As stated in the annexed declaration, Plaintiff has withdrawn her request for the court to liquidate the debt. Here, the relief sought by Plaintiff in the pleadings was for the Court to enter judgment in her favor against Defendant as follows: "(1) on her Complaint pursuant to 11 U.S.C. §523(a)(6) excepting from discharge any debts owed by Defendant to Plaintiff; (2) awarding the costs of this action to Plaintiff, including reasonable attorneys' fees; and (3) for such other relief as the Court deems just and proper."

Plaintiff withdraws her request for costs and reasonable attorney fees and requests that a judgment be entered deeming the debt to be dischargeable. The aforementioned remedies were previously pleaded in Plaintiff's Complaint and therefore this Court can grant them pursuant to Rule 54(c).

## ALTERNATIVE RELIEF

Should the court determine that it is unable to enter a default judgment without the debt being liquidated, it is respectfully requested that the automatic stay be lifted so that the case can proceed in state court. Plaintiff is able to demonstrate the stay should be lifted pursuant to §§ 362(c)(2)(C) and 362(d)(1).

First, with the exception of the debt relating to this proceeding, the Court has already issued an order granting discharge, which can lift the stay pursuant to 362(c)(2)(C). However, if the stay is still active pursuant to the adversary proceeding, the stay should be lifted under Section 362(d)(1).

A stay can be lifted upon consideration of the following factors:

> 1. Whether relief would result in a resolution of the issues;
> 2. Whether a special tribunal with the necessary expertise has been established to hear the cause of action;
> 3. Judicial economy;
> 4. Whether relief would result in a partial or complete resolution of the proceeding;
> 5. The lack of interference with the bankruptcy case;
> 6. Whether litigation in another forum would prejudice the interests of other creditors;
> 7. Whether litigation is already pending;
> 8. Bad faith; and
> 9. The impact of the stay on the parties and the balance of the harm.

(Williams v Horowitz (In re Horowitz), 2010 Bankr LEXIS 701, at *5-6 [Bankr EDNY Mar. 1, 2010, Nos. 809-75567-ast, 09-8434-ast])

Here, the factors weigh in favor of lifting the stay. If the court ruled on the underlying request – whether the harm caused by Rivera is nondischargable pursuant to 523(A)(6) – then the matter would be resolved in Bankruptcy court and the sole issues would be determined in Supreme Court. The pertinent issues concerning the state court action relate solely to state and city law and are not creatures of the Bankruptcy Code. Judicial economy is better served

through the Supreme Court deciding the issues of liability and damages rather than two courts deciding the damages relating to Rivera's damaging conduct. There will be no interference with the bankruptcy case or the rights of any creditors as the Chapter 7 has already been discharged. And, finally, a state action is already pending and discovery is underway.

However, given the fact that Defendant has willfully chosen to default in this action, as evidenced by his counsel's email, the court should not abstain from the matter but rather issue a determination that the debt is nondischargeable as a matter of law.

## **CONCLUSION**

This Court should enter its default judgment against Defendant, including an order finding that the debt is not dischargeable, or in the alternative lift the stay so that the matter can be litigated in state court.

Dated:    December 13, 2023
          New York, New York

*Daniel S. Szalkiewicz, Esq.*
Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.